Slip Op. 20-15

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UTTAM GALVA STEELS LIMITED,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>CALIFORNIA STEEL INDUSTRIES INC., AND STEEL DYNAMICS, INC.,<br><br>      Defendant-Intervenors. | Before: Leo M. Gordon, Judge<br><br>Court No. 19-00044 |

**OPINION and ORDER**

[Commerce's Final Results sustained in part and remanded in part.]

Dated: February 6, 2020

  John M. Gurley and Aman Kakar, Arent Fox LLP, of Washington, DC, for Plaintiff Uttam Galva Steels Limited.

  Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel on the brief was Rachel A. Bogdan, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

  Roger B. Schagrin and Christopher T. Cloutier, Schagrin Associates of Washington, DC, for Defendant-Intervenors California Steel Industries, Inc. and Steel Dynamics, Inc.

  **Gordon, Judge**: This action involves the final results of the administrative review

conducted by the U.S. Department of Commerce ("Commerce") of the countervailing duty ("CVD") order of certain corrosion-resistant steel products ("CORE") from India. See Certain Corrosion-Resistant Steel Products from India, 84 Fed. Reg. 11,053 (Dep't of Commerce Mar. 25, 2019) (final results admin. review) ("Final Results"); see also accompanying Issues and Decision Memorandum, C-533-864, PD[1] 193 (Dep't of Commerce Mar. 18, 2019), available at https://enforcement.trade.gov/frn/summary/india/2019-05647-1.pdf (last visited this date) ("Decision Memorandum").

    Before the court is the USCIT Rule 56.2 motion for judgement on the agency record filed by Plaintiff Uttam Galva Steels Limited ("Uttam Galva" or "UGSL"). See Pl.'s Mem. in Supp. of its 56.2 Mot. for J. on the Agency R., ECF No. 25[2] ("Pl.'s Br."); see also Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 26 ("Def.'s Resp."); Def.-Intervenors' Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 27 ("Def.-Intervenors' Resp."); Reply Br. of Pl. Uttam Galva, ECF No. 28 ("Pl.'s Reply"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i)[3], and 28 U.S.C. § 1581(c) (2012). For the reasons that follow, the court sustains in part and remands in part the Final Results.

---

[1] "PD" refers to a document in the public administrative record, which is found in ECF No. 20-3, unless otherwise noted. "CD" refers to a document in the confidential administrative record, which is found in ECF No. 20-2, unless otherwise noted.
[2] All citations to parties' briefs and the agency record are to their confidential versions unless otherwise noted.
[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr. Administrative Law and Practice § 9.24[1] (3d ed. 2019). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2019).

## II.  Discussion

### A.  Application of Total Adverse Facts Available to Uttam Galva

In initiating its administrative review of the CVD order of CORE from India, Commerce examined whether producers/exporters of the subject merchandise are cross-owned with one another, a parent or holding company, or with their input suppliers. 19 C.F.R. § 351.525(b)(6). Commerce required respondents, including Uttam Galva, to disclose the firms with which they are affiliated and cross-owned as part of their initial questionnaire response. See Decision Memorandum at 25. Specifically, the questionnaire referenced the definition of "Affiliated Persons" in 19 U.S.C. § 1677(33), which includes:

> (1) members of the same family, (2) any officer or director of an organization and such organization, (3) partners, (4) employers and their employees, and (5) any person or organization directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization. In addition, affiliates include (6) any person who controls any other person and that person, or (7) any two persons who directly control, are controlled by, or are under common control with, any person. "Control" exists where one person is legally or operationally in a position to exercise restraint or direction over the other person.

Id. Commerce explained that affiliation information for respondents is critical to how Commerce conducts the administrative review. "Commerce considers the identification of affiliates … to be so integral to its countervailing duty proceedings that … it seeks information regarding affiliates prior to submission of all the other information solicited by the questionnaire. From a procedural standpoint, Commerce uses [this affiliation information] to determine the universe of companies from which additional information

may need to be solicited." Id. Commerce further explained that "[i]f Commerce requests a full questionnaire of a company identified in a respondent's affiliation response, Commerce then uses the information in that … response to determine … whether or not cross-ownership exists between the respondent and the affiliate for the purposes of the countervailing duty law, in accordance with 19 CFR 351.525(b)(6)(vi)." Id. at 25–26.

In its initial questionnaire response, Plaintiff identified several affiliates and Commerce preliminarily found that "cross-ownership exists among UGSL, [Uttam Value Steels Limited ("UVSL")], and an affiliated input supplier, Uttam Galva Metallics Limited (UGML)." See Memorandum from J. Maeder to G. Taverman, re: Post-Preliminary Analysis, at 2 (Dep't of Commerce Dec. 19, 2018), PD 182 ("Post-Preliminary Analysis Memo"). Additionally, in its initial questionnaire response, UVSL "identified its controlling shareholders as First India Infrastructure Private Limited ("FIIPL") and Metallurgical Engineering and Equipment Limited ("MEEL")." Id. at 4. Notably, Uttam Galva did not identify any affiliation with FIIPL or MEEL, even though these entities are "owned by Anuj and Ankit Miglani, who were in turn the managing director and director, respectively, of UGSL during the [period of review ("POR")]." Id. Moreover, Uttam Galva failed to report any affiliation with Lloyds Steels Industries Limited ("LSIL"). See Decision Memorandum at 26 (citing Post-Preliminary Analysis Memo).

In the course of evaluating new subsidy allegations brought by petitioners,[4] Commerce placed on the record certain financial statements of LSIL covering the POR.

---

[4] Petitioners alleged in the new subsidy allegations that "UGSL and UVSL benefitted from debt-to-equity swaps provided to UVSL prior to the POR, when it was known as Lloyds

Court No. 19-00044 Page 6

See Post-Preliminary Analysis Memo at 5. "[T]hese financial statements identif[ied] FIIPL and MEEL as owners of 46.11 percent of the shares in LSIL and identified a 'scheme of arrangement' between UVSL and LSIL regarding a demerger of the Engineering Division from the former to the latter." Id. Commerce invited interested parties to comment on the LSIL financial statements but received no comments. Id. Commerce then issued a supplemental questionnaire to Plaintiff for the purpose of clarifying the role of its previously disclosed affiliates and its relationship with LSIL, including the "demerger arrangement" identified in the LSIL documents. Id. In response, Plaintiff submitted information acknowledging that FIIPL and MEEL owned 46.11 percent of the shares in both UVSL and LSIL during the POR. Id. Commerce noted that:

> Nearly 11 months passed between UGSL's submission of its November Affiliation Response and its response to the Third Supplemental Questionnaire, in October, nearly a full year later. In the intervening time, Commerce issued its Preliminary Results, while UGSL continued to obfuscate its relationship with LSIL via common shareholding through the Miglani family, and moreover continued to not identify the Engineering Division which it also acquired. At no point prior to Commerce placing the LSIL Memorandum on the record did UGSL proffer the information that the same Miglani family that controlled the Uttam group of companies also owned significant shares in LSIL. Instead, the company provided false information that it acquired control of a single division of Lloyds Steel[5] as a corporate entity, without providing any detail regarding how Lloyds Steel was in fact acquired as whole, and only during the POR effectively divided into two affiliated companies, UVSL and LSIL.

---

Steel Industries Limited (Lloyds Steel)." Post-Preliminary Analysis Memo at 5. UGSL explained that FIIPL and MEEL "acquired a controlling number of shares in Lloyds Steel in 2012, whereupon the name was changed to UVSL." Id.
[5] See footnote 4 regarding "Lloyds Steel."

Id. at 5–6. Ultimately, Commerce found that Plaintiff had "withheld necessary information that was requested of it, failed to provide information within the deadlines established, and significantly impeded this proceeding by not fully disclosing its affiliation with LSIL, a company with which we found to be cross-owned, and submitting an incomplete response on behalf of UVSL." Id. at 6. Commerce elaborated that "[b]y doing so, UGSL has undermined Commerce's ability to fully investigate the universe of affiliated and cross-owned companies that may have subsidies attributable to UGSL as a producer of CORE." Id.

As a result, Commerce determined that it would "rely on facts otherwise available…with respect to UGSL, pursuant to [19 U.S.C. § 1677e(a)(2)(A)–(C).]" Id.; see also Decision Memorandum at 26. Moreover, Commerce found that Plaintiff "did not cooperate to the best of its ability to comply with the requests for information in this investigation." Id. Accordingly, Commerce determined that an adverse inference was warranted under 19 U.S.C. § 1677e(b) because Plaintiff's failure to timely provide Commerce with complete and accurate affiliate information deprived Commerce of the opportunity to examine the issues of affiliation and cross-ownership between Uttam Galva and LSIL. Id.

Plaintiff concedes that it failed to provide information regarding LSIL in its initial questionnaire response. See Pl.'s Br. at 7. Despite this concession, Plaintiff maintains that Commerce's decision to apply AFA with respect to the issues of affiliation and cross-ownership between Uttam Galva and LSIL was unreasonable. Id. Plaintiff provides a detailed history of the origin of LSIL, noting that LSIL is the present name of the former

Court No. 19-00044                                                                                                          Page 8

Engineering Division of Lloyds Steel. Id. at 8–10. Plaintiff further explains that Lloyds Steel was composed of both an engineering division and a steel division, and that Plaintiff gained a controlling share of only the steel division. Id. Although the two divisions were technically part of the same company, Plaintiff argues that they operated separately (separate business activities, separate teams, separate manufacturing locations, separate accounting systems). Id. Plaintiff also notes that there was an informal agreement or a "mutual understanding" that ownership and control of the steel division would be transferred to FIIPL and MEEL (owned and operated by the Miglani family) as part of a "Demerger Scheme," while control of the engineering division would remain with the original owners of Lloyds Steel. Id. at 10. According to this agreement, the Miglanis were to transfer their ownership stake in LSIL to the original owners. Id. Plaintiff acknowledges that this transfer has not yet occurred and continues to maintain that although the Miglani family owns 46.11 percent of the shares in LSIL, they do not have "managerial control." Id. at 10–11.

      Commerce considered and rejected Plaintiff's arguments as to why it was unreasonable for Commerce to conclude that affiliation existed between Plaintiff and LSIL during the POR. See Decision Memorandum at 27–28. Commerce explained that despite Plaintiff's arguments regarding the demerger scheme,[6] the agency did not "consider the

---

[6] Plaintiff argues that Commerce dismissed the significance of the dates of the demerger scheme without providing an adequate reason. See Pl.'s Reply at 6. Plaintiff contends that in considering the demerger scheme of the steel and engineering divisions, Commerce ignored the "appointed date," which was before the POR, and focused on the "effective date," which was within the POR. Id.

date of the demerger to be especially relevant in the first place, as the Miglani's ownership stake in LSIL was acquired upon the demerger of the UVSL Engineering Division to LSIL. Therefore, the Miglani family's stake in UVSL was merely substituted with an identical stake in a new affiliate, LSIL." Id. at 28. Accordingly, Commerce found that "[r]egardless of whether UVSL or LSIL owned and operated the Engineering Division, common ownership with Uttam Galva and LSIL exists via the Miglani family." Id.

Given this explanation, the court concludes that Plaintiff has failed to demonstrate that Commerce's finding of cross-ownership was unreasonable. Plaintiff points to the information it (belatedly) provided to Commerce regarding the unique ownership agreement and control scheme of LSIL between the original owners and the Miglani family. See Pl.'s Br. at 9–13. However, as Commerce emphasized, "Uttam Galva acknowledges that this understanding between the parties is not documented anywhere." Decision Memorandum at 28. Plaintiff urges the court to direct Commerce to infer from the record that LSIL operated outside of the control of Uttam Galva and the Miglani family, but the court will not overturn Commerce's reasonable refusal to make this inference given that "the sole fact remains that a significant ownership share of LSIL remained within the Miglanis during the POR." Id.; see also Aristocraft of Am., LLC v. United States, 42 CIT ___, ___, 331 F. Supp. 3d 1372, 1380 (2018) ("What the court cannot do is direct Commerce to favor Plaintiffs' preferred evidentiary inference over another reasonable inference."); Mitsubishi Heavy Indus. Ltd. v. United States, 275 F.3d 1056, 1062 (Fed. Cir. 2001) ("The possibility of drawing two inconsistent conclusions from the evidence

does not prevent an administrative agency's finding from being supported by substantial evidence." (internal citation and quotation marks omitted)).

Plaintiff challenges Commerce's finding that Uttam Galva hindered the CVD proceeding and that "Commerce had no opportunity to consider whether Uttam Galva should provide a full questionnaire response." See Pl.'s Br. at 13. Plaintiff notes that "Commerce had four months after the third supplemental questionnaire for consideration but did not ask for any supplemental or full questionnaire responses from Uttam Galva." Id. Plaintiff argues that these four months gave Commerce ample time to request any additional information and because the agency did not do so, Uttam Galva cannot be said to have "impeded the investigation." Id.

Plaintiff's argument ignores the importance that Commerce places on receiving affiliated company information early in the proceeding. See Decision Memorandum at 25-26 (describing importance of Commerce receiving affiliation information early in proceeding in order to conduct cross-ownership evaluation pursuant to 19 C.F.R. § 351.525(b)(6)(vi)). As Commerce emphasized, Plaintiff's submission of additional affiliate information "nearly 11 months after the [due date of the] response to the affiliation section of the initial questionnaire" effectively deprived Commerce of the ability to evaluate whether additional information from LSIL was necessary to determine the existence of cross-ownership between Uttam Galva and LSIL. See Decision Memorandum at 26 & n.69. "Agencies with statutory enforcement responsibilities enjoy broad discretion in allocating investigative and enforcement resources." Torrington Co. v. United States, 68 F. 3d 1347, 1351 (Fed. Cir. 1995). The court will not second-guess

Commerce's assessment of its own workload, and Plaintiff has failed to demonstrate that Commerce acted unreasonably by not further investigating LSIL after Plaintiff belatedly supplemented the record with affiliation information.

Commerce's determination as to whether programs are countervailable is a fact-intensive examination that the agency is entitled to undertake, and Plaintiff cannot preclude it by failing to provide a response. See Essar Steel Ltd. v. United States, 34 CIT 1057, 1073, 721 F. Supp. 2d 1285, 1298–99 (2010) ("Regardless of whether [the respondent] deemed the information relevant, it nonetheless should have produced it [in] the event that Commerce reached a different conclusion…"); see also Ansaldo Componenti, S.p.A. v. United States, 10 CIT 28, 37, 628 F. Supp. 198, 205 (1986) (holding that "it is Commerce, not the respondent, that determines what information is to be provided," despite any claim by respondent that information request "cannot legally serve as the basis" for agency's view). Commerce reasonably found that "Uttam Galva failed to provide information requested of it regarding its affiliates, failed to provide information by established deadlines, and significantly impeded Commerce's ability to conduct this administrative review." Decision Memorandum at 25. Commerce also reasonably found that Uttam Galva's failure to provide the affiliation information regarding LSIL in a timely manner demonstrated that Plaintiff "failed to cooperate in this proceeding to the best of its ability." Id. at 26. Accordingly, the court sustains Commerce's determination that Uttam Galva's failure to disclose its affiliation with LSIL merited the application of AFA pursuant to 19 U.S.C. § 1677e.

### B.　Calculation of AFA Rate

As AFA, Commerce assigned LSIL's use of applicable subsidy programs to Uttam Galva, resulting in the assignment of an AFA rate of 588.43 percent for Uttam Galva. See Decision Memorandum at 24, 41–45. Plaintiff contends that Commerce erred in its application of AFA when it determined "that LSIL used all of the applicable programs under review, and [attributed] the use of these programs to Uttam Galva." Id. at 24. Specifically, Plaintiff contends that Commerce's AFA analysis was not reasonable because it "Failed to Evaluate the Situation or Provide a Reasoned Explanation for Its Selection of Rates for Each Countervailable Program Commerce Identified." Pl.'s Br. at 20–25. Plaintiff highlights that for at least one of the program rates that Commerce assigned, a 16.63 percent rate for the "Market Access Initiative Program," Commerce's proffered basis for that rate only supports a 6.06 percent rate. Id. at 21–22.

Additionally, Plaintiff maintains that Commerce's AFA rate selection for Uttam Galva was unreasonable regarding several programs from "which LSIL could not have benefited based on the record evidence." Id. at 25. Plaintiff specifies that "(1) Hot-Rolled Steel for LTAR, (2) SGUP Exemption from Entry Tax for the Iron and Steel Industry, (3) SGUP Long-term Interest Free Loans Equivalent to the Amount of VAT and CST Paid; and (4) SGUP's Interest Free Loans Under the SGUP Industrial Development Promotion Rules 2003 are programs that were assigned an AFA rate and aggregated as part of the total AFA rate in the Final Results but were never in the initial questionnaire or initiated as a part of the new subsidy allegations during the administrative review." Id. Plaintiff also contends that there are several other programs for which Commerce assigned AFA rates

Court No. 19-00044                                                                                                Page 13

that "are plainly inapplicable to LSIL" given the record. Id. at 26–27. Plaintiff argues that "Commerce should have considered record evidence that LSIL could not have used all of the programs for which it determined AFA rates." Id. at 27.

Defendant, for its part, appears to recognize the merit of some of Plaintiff's arguments and has requested a remand for Commerce to reconsider its determination of AFA rates with respect to the Market Access Initiative Program, as well as the other four programs specifically identified by Plaintiff (i.e., Hot-Rolled Steel for LTAR, SGUP Exemption from Entry Tax for the Iron and Steel Industry, SGUP Long-term Interest Free Loans Equivalent to the Amount of VAT and CST Paid; and SGUP's Interest Free Loans Under the SGUP). See Def.'s Resp. at 16–19. The court will therefore remand the matter to Commerce to reconsider these issues. SKF USA Inc. v. United States, 254 F.3d 1022, 1029–30 (Fed. Cir. 2001).

This leaves the question of the scope of the remand. Defendant seeks to have the court sustain its AFA subsidy rate assignments for Uttam Galva, excluding the five specific rates for which Commerce requests a remand. See Def.'s Resp. at 19–28. Plaintiff has highlighted that Commerce provided a limited explanation for why each of the 70 AFA rates assigned to LSIL and Uttam Galva was reasonable. See Pl.'s Br. at 20–25. Furthermore, Plaintiff has identified record evidence indicating that LSIL could not have benefitted from certain countervailed programs. See id. at 25–28. Because the issue of Uttam Galva and LSIL's cross-ownership was not resolved until late in the proceeding, it appears that Commerce has not had the opportunity to address Plaintiff's arguments as to the specific rates assigned as AFA to LSIL and Uttam Galva. The remand sought by

Court No. 19-00044 Page 14

Defendant provides Commerce with an opportunity to address Plaintiff's arguments in the first instance as to why certain rates should not be included and to further explain its rate selections. The court therefore declines to limit the scope of the remand, and the court will reserve decision on the reasonableness of Commerce's AFA rate selections.

### III.  Conclusion

Accordingly, it is hereby

**ORDERED** that Commerce's decision to apply AFA to Uttam Galva is sustained; it is further

**ORDERED** that this matter is remanded for Commerce to reconsider and further explain its AFA rate assignments; it is further

**ORDERED** that Commerce shall file its remand results on or before May 6, 2020; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

　　　　　　　　　　　　　　　　　　　　　　  /s/ Leo M. Gordon  
　　　　　　　　　　　　　　　　　　　　　　Judge Leo M. Gordon

Dated: February 6, 2020
　　　　New York, New York