Slip Op. 20-151

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UTTAM GALVA STEELS LIMITED, | |
| Plaintiff, | |
| v. | Before: Leo M. Gordon, Judge |
| UNITED STATES, | Court No. 19-00044 |
| Defendant, | |
| and | |
| CALIFORNIA STEEL INDUSTRIES INC., AND STEEL DYNAMICS, INC., | |
| Defendant-Intervenors. | |

**OPINION and ORDER**

[Commerce's <u>Remand Results</u> sustained in part and remanded in part.]

Dated: October 29, 2020

John M. Gurley and Aman Kakar, Arent Fox LLP, of Washington, DC, for Plaintiff Uttam Galva Steels Limited.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With her on the brief were Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel on the brief was Rachel A. Bogdan, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

Court No. 19-00044                                                                   Page 2

        Roger B. Schagrin and Christopher T. Cloutier, Schagrin Associates of
Washington, DC, for Defendant-Intervenors California Steel Industries, Inc. and Steel
Dynamics, Inc.

        Gordon, Judge: This action involves the final results of the 2016 administrative

review conducted by the U.S. Department of Commerce ("Commerce") of the

countervailing duty ("CVD") order of certain corrosion-resistant steel products from India.

See Certain Corrosion-Resistant Steel Products from India, 84 Fed. Reg. 11,053 (Dep't

of Commerce Mar. 25, 2019) (final results admin. review) ("Final Results"); see also

accompanying Issues and Decision Memorandum, C-533-864, PD[1]193 (Dep't of

Commerce         Mar.         18,         2019),         available         at

https://enforcement.trade.gov/frn/summary/india/2019-05647-1.pdf (last visited this date)

("Decision Memorandum").

        Before the court are Commerce's Final Results of Redetermination Pursuant to

Court Remand, ECF No. 34[2] ("Remand Results"), filed pursuant to the court's remand

order in Uttam Galva Steels Ltd. v. United States, 44 CIT ___, 358 F. Supp. 3d 1366

(2020) ("Uttam Galva I"). See Plaintiff's Comments on Remand Redetermination, ECF

No. 39 ("Pl.'s Br."); see also Defendant's Response to Comments on Remand

Redetermination, ECF No. 41 ("Def.'s Resp."); Defendant-Intervenors' Responsive

_____

[1] "PD" refers to a document in the public administrative record, which is found in ECF No.
20-3, unless otherwise noted. "CD" refers to a document in the confidential administrative
record, which is found in ECF No. 20-2, unless otherwise noted.
[2] All citations to the Remand Results, the agency record, and the parties' briefs are to
their confidential versions unless otherwise noted.

Comments in Support of the Remand Redetermination, ECF No. 40 ("Def.-Int.'s Resp.").
The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930,
as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)[3], and 28 U.S.C. § 1581(c) (2018).  For the
reasons follow, the court sustains in part and remands in part the Remand Results.

## I. Background

Although the court assumes familiarity with the procedural history and its prior
decision in this matter, some additional background will aid the reader. Commerce
assigned adverse facts available ("AFA") rates totaling 588.42% to Uttam Galva Steels
Limited ("Uttam Galva" or "Plaintiff") due to Uttam Galva's failure to provide information
about its affiliation with Lloyds Steel Industry Limited ("LSIL"). See Final Results, 84 Fed.
Reg. at 11,054. Uttam Galva challenged, administratively and here, Commerce's
application of AFA with respect to the issues of affiliation and cross-ownership between
Uttam Galva and LSIL, and Commerce's calculation of AFA rates. See Decision
Memorandum at 22–28; Compl., ECF No. 4.

Recognizing the merit of some of Uttam Galva's claims, Commerce requested and
received a voluntary remand to reconsider its determination of AFA rates with respect to
the Market Access Initiative Program and the other four programs specially identified by
Uttam Galva, but not for any other programs included in the Final Results. See Uttam
Galva I, 44 CIT at ___, 358 F. Supp. 3d at 1373. In addition to granting the voluntary

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of
Title 19 of the U.S. Code, 2018 edition.

remand, the court sustained Commerce's determination that Uttam Galva's failure to disclose its affiliation with LSIL merited the application of AFA pursuant to 19 U.S.C. § 1677e. Id. at ___, 358 F. Supp. 3d at 1371 ("Plaintiff has failed to demonstrate that Commerce's finding of cross-ownership was unreasonable."). In remanding the calculation of AFA rates, the court declined to limit the scope of the remand to only those programs for which Commerce sought a voluntary remand. Id. at ___, 358 F. Supp. 3d at 1373–74.

Pursuant to the remand, Commerce revised Uttam Galva's Market Access Initiative program rate downward from 16.63% to 6.06% and excluded previously assigned rates for "(1) the Provision of Hot-Rolled Steel for LTAR, (2) SGUP Exemption for the Iron and Steel Industry, (3) SGUP Long-Term Interest Free Loans Equivalent to the Amount of VAT and CST Paid, and (4) SGUP's Interest Free Loans." Remand Results at 5–6. However, Commerce determined that it would continue to apply the same AFA rates to all the other remaining programs identified in the Final Results based on the adverse inference that Uttam Galva benefitted from all initiated programs. Id. at 6–7.

Uttam Galva now challenges Commerce's continued assignment of AFA rates to the other remaining programs in the Final Results. Pl.'s Br. at 2. In particular, Uttam Galva contends that Commerce's failed to explain the differences in its application of AFA under substantially similar factual circumstances to Uttam Galva as compared with mandatory respondent JSW Steel Limited ("JSW") during the investigation segment of the underlying proceeding. Id. at 4–7. Plaintiff also argues that Commerce unreasonably attributed, as

AFA, 20 subsidy programs ("20 disputed programs") to LSIL, and by extension to Uttam Galva, despite information set forth in LSIL's financial statement that indicates that LSIL could not have benefitted from these programs. Id. at 7–10. Specifically, Uttam Galva contends that LSIL (1) did not maintain facilities within the Indian States of Andhra Pradesh and Karnataka and could not have been in receipt of the 16 initiated programs specific to those territories ("geographically specific programs"), and (2) was not engaged in mining activities and could not have received four subsidies specific to that sector ("industry specific programs"). Id.

## II. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr. Administrative Law and Practice § 9.24[1] (3d ed. 2020). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2020).

### III. Discussion

### A.  Application of Adverse Facts Available to All Programs Initiated

In the investigation segment of the underlying proceeding, Commerce selected two mandatory respondents: Uttam Galva and JSW. See Certain Corrosion-Resistant Steel Products From India, 81 Fed. Reg. 35,323 (Dep't of Commerce June 2, 2016) (final affirm. determ.), and accompanying Issues and Decision Memorandum at 1, available at https://enforcement.trade.gov/frn/summary/india/2016-12967-1.pdf (last visited on this date). Commerce found that JSW failed to submit a response for a cross-owned input supplier ("Affiliate X") and determined that the application of AFA was appropriate. See id. at 8–9. In applying AFA in calculating JSW's subsidy rate, Commerce did not apply adverse inferences to all programs initiated upon during the investigation. See id. at 9. ("[W]e made an adverse inference that Affiliate X benefitted from all of the programs used by the other entities within the JSW group of companies that did properly submit

questionnaire responses."); see also Remand Results at 18 ("we acknowledge that we did not countervail all programs initiated upon when determining the subsidy rate for JSW"). In the administrative review at issue here, Commerce similarly found that Uttam Galva had failed to report the existence of an affiliate, LSIL, and determined that the application of AFA was appropriate. See Decision Memorandum at 24. In calculating Uttam Galva's subsidy rate, however, Commerce did apply adverse inferences for all programs initiated upon with respect to LSIL. Remand Results at 18 ("while we acknowledge that we did not countervail all programs initiated upon when determining the subsidy rate for JSW in the investigation, as we explain below, this does not require us to deviate from our standard practice where companies fail to report all of their cross-owned entities in this segment of the proceeding…").

In its comments on the draft remand redetermination, Uttam Galva argued that Commerce's application of partial adverse facts available to JSW represented the agency's consistent administrative practice. See Remand Results at 18. Further, Uttam Galva contended that Commerce unreasonably deviated from this practice when applying AFA to Uttam Galva. See id. at 17–18 ("Commerce's calculation of Uttam Galva's AFA rate in the Final Results constituted a change in agency policy because Commerce announced a new method of calculating a duty.").

Commerce disagreed that its partial AFA application to JSW in the investigation segment demonstrated an established practice, and instead explained that application of AFA to Uttam Galva was in fact the agency's consistent practice. See Remand Results

at 18–19 ("Uttam Galva misstates agency practice... Commerce has applied AFA rates

for all programs initiated upon in constructing a total AFA rate."). Commerce identified

"numerous CVD proceedings" where the agency "applied AFA rates for all programs

initiated upon in constructing a total AFA rate." Id. at 18. Commerce further explained why

its different calculation of JSW's AFA subsidy rate did not constitute agency practice,

noting that an action only "becomes an 'agency practice' when a uniform and established

procedure exists that would lead a party, in the absence of notification of a change,

reasonably to expect adherence to the [particular action] or procedure." Remand Results

at 20 (citing SeAH Steel Vina Corp. v. United States, 35 CIT ___, 182 F. Supp. 3d 1316

(2011) and Huvis Corp. v. United States, 31 CIT ___, 525 F. Supp. 2d 1370 (2007)

(internal quotation marks omitted)). Given this explanation and analysis of prior

determinations, Commerce concluded that its "treatment of Uttam Galva is entirely

consistent with past practice." Remand Results at 21.

 After reviewing Commerce's analysis in the Remand Results, Uttam Galva

appears to have accepted this position. See Pl.'s Br. at 4 ("Commerce's practice is to

calculate an AFA rate for all programs when companies fail to report all their cross-owned

entities."). However, Uttam Galva now focuses its argument on Commerce's failure to

provide a reasoned explanation for the decision to calculate the AFA subsidy rates of

JSW and Uttam Galva differently. See id. at 4–6. In rejecting Uttam Galva's "practice"

argument regarding its treatment of JSW, Commerce emphasized that the agency is "not

bound by its determination in the investigation segment of this proceeding because the

records of each segment are distinct." <u>See</u> <u>Remand Results</u> at 18. Commerce stated that

it is not required to "deviate from [its] standard practice where companies fail to report all

of their cross-owned affiliates in this segment of the proceeding." <u>Id.</u>

      Commerce's analysis in the <u>Remand Results</u>, while clarifying the agency's practice

in the application of AFA, fails to explain why the agency found it appropriate to apply

AFA differently for JSW than it did for Uttam Galva. Defendant-Intervenors, California

Steel Industries and Steel Dynamics, Inc., attempt to provide a rationale for that differing

treatment, arguing that "[JSW's] circumstances are… easily distinguished from Uttam

Galva's." <u>See</u> Def.-Int.'s Resp. at 2 ("The affiliate in the investigation was acquired

through a broader transaction and operated as an affiliate during only the final two months

of the period of investigation and was then closed down."). Whatever the merits of

Defendant-Intervenors' argument, the court may not sustain Commerce's determination

on a rationale not provided by the agency. <u>See</u> <u>Sec. & Exch. Comm'n v. Chenery Corp.</u>,

332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or

judgment which an administrative agency alone is authorized to make, must judge the

propriety of such action solely by the grounds invoked by the agency."). While there may

have been factual distinctions between the application of AFA to JSW in the investigation

and the application of AFA to Uttam Galva in this review, Commerce failed to identify

them and explain what distinguished Uttam Galva's situation from that of JSW. <u>See</u>

<u>Remand Results</u> at 18–21. The court therefore remands this issue so Commerce may

provide a reasoned explanation for the differences in its application of AFA to JSW and

Uttam Galva, and, if appropriate, reconsider its application of AFA to Uttam Galva. <u>See</u>
<u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43
(1983) ("[T]he agency must examine the relevant data and articulate a satisfactory
explanation for its action including a 'rational connection between the facts found and the
choice made.'"); <u>SKF USA Inc. v. United States</u>, 263 F.3d 1369, 1382 (Fed. Cir. 2001)
("[A]n agency action is arbitrary when the agency offer[s] insufficient reasons for treating
similar situations differently."), <u>aff'd,</u> 332 F.3d 1370 (Fed. Cir. 2003).

### B. Commerce's Examination of LSIL's Financial Statement

Uttam Galva contends that Commerce's inclusion of the "20 disputed programs"
within its rate calculation was unreasonable. <u>See</u> Pl.'s Br. at 7–10. Uttam Galva argues
that Commerce improperly ignored and dismissed LSIL's financial statement as an
"incomplete and unreliable source." <u>Id.</u> at 10.  Uttam Galva maintains that the LSIL
financial statement comprises conclusive proof that LSIL does not have facilities outside
of Maharastra. <u>Id.</u> at 8–9 (arguing against Commerce's inclusion of geographically
specific programs in AFA rate calculation). Uttam Galva also argues that the statement
demonstrates that LSIL does not manufacture goods whose production could utilize
mining subsidies related to the "purchase of high-grade iron ore, captive mining rights for
iron ore and coal and mine allotments for less than adequate remuneration." <u>Id.</u> at 8, 10
(challenging Commerce's inclusion of industry specific programs in AFA rate calculation).
Accordingly, Uttam Galva maintains that LSIL could not have benefited from the
20 disputed programs. <u>Id.</u> at 9–10.

Court No. 19-00044                                                              Page 11

Commerce rejected Plaintiff's argument that the LSIL financial statement demonstrated that LSIL (and thus Uttam Galva) could not have benefitted from the 20 disputed programs. See Remand Results at 23. Commerce explained that it did not find the LSIL financial statement to provide a sufficiently reliable basis to conclude that LSIL could not have benefitted from the 20 disputed programs, stating that the LSIL financial statement did not "provide a definitive listing of LSIL's business activities or where LSIL conducted those business activities." Id. at 25. Moreover, Commerce noted that the provision of such a statement "does not substitute for a respondent's obligation to respond to Commerce's questions on business activities/location…" and that "Commerce… had no opportunity to pursue these lines of inquiry due to Uttam Galva's failure to fully cooperate." Id.

Given this record, the court does not agree with Uttam Galva that Commerce acted unreasonably by including the 20 disputed programs in Uttam Galva's AFA rate calculation. The court has already sustained Commerce's decision to apply AFA to Uttam Galva for its failure to provide complete and accurate information regarding its affiliation with LSIL. See Uttam Galva I, 44 CIT at ___, 358 F. Supp. 3d at 1372. Commerce reasonably explained why it found that the LSIL financial statement did not conclusively provide a full account of LSIL's geographic presence and sectoral activities. Remand Results at 25. Plaintiff's arguments fail to demonstrate that the LSIL financial statement could lead Commerce to reach "one and only one reasonable outcome" on this administrative record, namely that LSIL could not have benefitted from the 20 disputed

programs. See Tianjin Wanhua Co. v. United States, 40 CIT ___, ___, 179 F. Supp. 3d 1062, 1071 (2016) (noting that plaintiff must demonstrate that its preferred evidentiary finding is "the one and only one reasonable" outcome on the administrative record, "not simply that [its preferred finding] may have constituted another possible reasonable choice"). Accordingly, the court sustains as reasonable Commerce's determination to include the 20 disputed programs in Uttam Galva's AFA rate calculation.

### IV. Conclusion

Accordingly, for the foregoing reasons it is hereby

**ORDERED** that Commerce's decision to include the 20 disputed programs within the AFA rate calculation for Uttam Galva is sustained; it is further

**ORDERED** that this matter is remanded for Commerce to further explain, and if appropriate, reconsider its application of AFA to Uttam Galva as compared to JSW; it is further

**ORDERED** that Commerce shall file its remand results on or before December 22, 2020; and it is further

**ORDERED** that, if applicable the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

                                                          /s/ Leo M. Gordon
                                                          Judge Leo M. Gordon

Dated: October 29, 2020
          New York, New York