Slip Op. 21-48

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UTTAM GALVA STEELS LIMITED, | |
| Plaintiff, | |
| v. | Before: Leo M. Gordon, Judge |
| UNITED STATES, | |
| Defendant, | Court No. 19-00044 |
| and | |
| CALIFORNIA STEEL INDUSTRIES, INC., and STEEL DYNAMICS, INC., | |
| Defendant-Intervenors. | |

**OPINION**

[Commerce's <u>Second Remand Results</u> sustained.]

Dated: April 29, 2021

<u>John M. Gurley</u> and <u>Aman Kakar</u>, Arent Fox LLP, of Washington, DC, for Plaintiff Uttam Galva Steels Limited.

<u>Mollie L. Finnan</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director. Of counsel on the brief was <u>Rachel Bogdan</u>, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

Gordon, Judge: This action involves the final results of the 2016 administrative review conducted by the U.S. Department of Commerce ("Commerce") of the countervailing duty ("CVD") order of certain corrosion-resistant steel products from India. See Certain Corrosion-Resistant Steel Products from India, 84 Fed. Reg. 11,053 (Dep't of Commerce Mar. 25, 2019) (final results admin. review) ("Final Results"); see also accompanying Issues and Decision Memorandum, C-533-864, PD[1]193 (Dep't of Commerce Mar. 18, 2019), available at https://enforcement.trade.gov/frn/summary/india/2019-05647-1.pdf (last visited this date) ("Decision Memorandum").

Before the court are Commerce's Final Results of Redetermination Pursuant to Court Remand, ECF No. 45[2] ("Second Remand Results"), filed pursuant to the court's remand order in Uttam Galva Steels Ltd. v. United States, 44 CIT ___, 476 F. Supp. 3d 1387 (2020) ("Uttam Galva II").  See Plaintiff's Comments on Remand Redetermination, ECF No. 51 ("Pl.'s Br."); see also Defendant's Response to Comments on Remand Redetermination, ECF No. 56 ("Def.'s Resp.").  The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C.

---

[1] "PD" refers to a document in the public administrative record, which is found in ECF No. 20-3, unless otherwise noted.   "CD" refers to a document in the confidential administrative record, which is found in ECF No. 20-2, unless otherwise noted.
[2] All citations to the Second Remand Results, the agency record, and the parties' briefs are to their confidential versions unless otherwise noted.

§ 1516a(a)(2)(B)(iii)[3], and 28 U.S.C. § 1581(c) (2018).  For the reasons follow, the court sustains the <u>Second Remand Results</u>.

## I. Background

Although the court assumes familiarity with the procedural history and its prior decision in this matter, some additional background will aid the reader.  Commerce assigned adverse facts available ("AFA") rates totaling 588.42% to Uttam Galva Steels Limited ("Uttam Galva" or "Plaintiff") due to Uttam Galva's failure to provide information about its affiliation with Lloyds Steel Industry Limited ("LSIL").  See <u>Final Results</u>, 84 Fed. Reg. at 11,054.

Uttam Galva subsequently challenged several aspects of the <u>Final Results</u>, and Commerce sought a voluntary remand to correct certain errors identified by Uttam Galva. See <u>Uttam Galva Steels Ltd. v. United States</u>, 44 CIT ___, 425 F. Supp. 3d 1366 (2020) ("<u>Uttam Galva I</u>"); Final Results of Redetermination Pursuant to Court Remand, ECF No. 35 ("<u>First Remand Results</u>").  In the initial remand, Commerce corrected the errors in the calculation and application of AFA rates for the subsidy programs identified in <u>Uttam Galva I</u>, but determined that it would continue to apply the same AFA rates to all of the other remaining programs identified in the <u>Final Results</u> based on the adverse inference that Uttam Galva benefitted from all initiated programs.  See <u>First Remand Results</u> at 6–7.

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

Uttam Galva challenged the <u>First Remand Results</u>, contending that Commerce failed to reasonably explain the differences in its application of AFA to Uttam Galva in the review as compared to JSW, a mandatory respondent during the underlying investigation. See <u>Uttam Galva II</u>, 44 CIT at ___, 476 F. Supp. 3d at 1391–92.  The court agreed and remanded the matter again for Commerce to explain why it chose to apply AFA differently to Uttam Galva as compared to JSW.  See <u>Uttam Galva II</u>, 44 CIT at ___, 476 F. Supp. 3d at 1392 ("While there may have been factual distinctions between the application of AFA to JSW in the investigation and the application of AFA to Uttam Galva in this review, Commerce failed to identify them and explain what distinguished Uttam Galva's situation from that of JSW….  The court therefore remands this issue so Commerce may provide a reasoned explanation for the differences in its application of AFA to JSW and Uttam Galva, and, if appropriate, reconsider its application of AFA to Uttam Galva.").

On remand, Commerce provided the requested explanation, noting that it "continue[d] to find that the facts of this review warrant application of total AFA to Uttam Galva."  <u>Second Remand Results</u> at 7.  Commerce reiterated that its standard practice is to apply total AFA due to a respondent's failure to properly report affiliates/cross-owned companies.  <u>Id.</u> at 7–8, 16 (citing <u>First Remand Results</u> at 5–6 and 18–21).  Commerce went on to explain that "the only remaining issue is whether a departure from this practice is appropriate with respect to Uttam Galva given application of partial AFA to JSW for its failure [to] timely report a cross-owned affiliate in the investigation."  <u>Id.</u> at 8.  Like Uttam Galva, JSW initially failed to properly report the existence of an affiliate.  <u>Id.</u> at 10.

However, JSW voluntarily raised and corrected its failure at the start of the verification. Id.  Additionally, the late-disclosed entity was only an operational affiliate of JSW for a short period of time, i.e. the last two months of the investigation.  Id. at 11.

In contrast to JSW, Commerce explained that there were not "any factors that would warrant a departure from our practice regarding application of total AFA" for Uttam Galva.  Id. at 11.  "[T]he circumstances surrounding [Commerce's] AFA determination for each company were different."  Id. at 8, 20.  First, despite multiple opportunities to report its affiliation, Uttam Galva only addressed its relationship with LSIL after Commerce directly prompted Uttam Galva for an explanation in a supplemental questionnaire.  See id. at 11.  And, when Uttam Galva finally addressed its relationship with LSIL, Commerce determined that "Uttam Galva mischaracterized its acquisition of Lloyds Steel by 'provid[ing] false information that it acquired control of a single division of Lloyds Steel… without providing any detail regarding how Lloyds Steel was in fact acquired as a whole.…'"  Id.  Second, LSIL was affiliated with Uttam Galva for the entire period of review.  Id.  at 10–11 (contrasting the facts in the underlying review with the fact that in the investigation, "the affiliate JSW initially failed to report to Commerce was operational only during the last two months of the period investigation.").

Uttam Galva now challenges as unreasonable Commerce's explanation and continued determination to apply total AFA in the Second Remand Results.  See Pl.'s Br. at 5–12.

## II. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).  Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review.  3 Charles H. Koch, Jr. Administrative Law and Practice § 9.24[1] (3d ed. 2021).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2020).

### III. Discussion

In the investigation segment of the underlying proceeding, Commerce selected two mandatory respondents: Uttam Galva and JSW.  See Certain Corrosion-Resistant Steel Products from India, 81 Fed. Reg. 35,323 (Dep't of Commerce June 2, 2016) (final affirm. determ.), and accompanying Issues and Decision Memorandum at 1, available at https://enforcement.trade.gov/frn/summary/india/2016-12967-1.pdf (last visited on this date).  Commerce found that JSW failed to submit a response for a cross-owned input supplier ("Affiliate X") and determined that the application of AFA was appropriate.  See id. at 8–9.  In applying AFA in calculating JSW's subsidy rate, Commerce did not apply adverse inferences to all programs initiated upon during the investigation.  See id. at 9.  ("[W]e made an adverse inference that Affiliate X benefitted from all of the programs used by the other entities within the JSW group of companies that did properly submit questionnaire responses."); see also First Remand Results at 18 ("we acknowledge that we did not countervail all programs initiated upon when determining the subsidy rate for JSW"); Second Remand Results at 9 ("We acknowledge that, in select instances, such as in the case of JSW in the investigation in this proceeding, Commerce has deviated from [the application of total AFA] due to mitigating factors.").  In the administrative review here, Commerce similarly found that Uttam Galva had failed to report the existence of an affiliate, LSIL, providing the basis for the application of AFA.  See Decision Memorandum at 24.  In calculating Uttam Galva's subsidy rate, however, Commerce applied adverse inferences for all programs initiated upon with respect to LSIL.  Remand Results at 18

("while we acknowledge that we did not countervail all programs initiated upon when determining the subsidy rate for JSW in the investigation, as we explain below, this does not require us to deviate from our standard practice where companies fail to report all of their cross-owned entities in this segment of the proceeding…").

In the <u>Second Remand Results</u>, Commerce reiterated that it "has a practice of applying total AFA where a company does not timely report its affiliations." <u>Second Remand Results</u> at 16. Commerce explained that the difference in its application of adverse inferences to Uttam Galva and JSW was reasonable "because the circumstances surrounding [the] AFA determinations for each company were different." <u>Id.</u> at 8. Commerce noted that there were several factual distinctions between its application of AFA to Uttam Galva and JSW, including significant "mitigating factors," which Commerce found to justify its more lenient application of AFA to JSW as compared to Uttam Galva. <u>See</u> <u>id.</u> at 9.

Specifically, Commerce emphasized the differing levels of cooperation on the part of JSW and Uttam Galva, noting that "a full explanation of Uttam Galva's affiliation/cross-ownership with LSIL was only obtained because of Commerce's inquiry into the issue." <u>Id.</u> at 10–11. Commerce also points to Uttam Galva's failure to comment in response to Commerce's placing of LSIL's financial statement on the record, and highlights the prodding required to elicit any information from Uttam Galva regarding its relationship with LSIL. <u>See</u> <u>id.</u> at 8–9 ("Only after Commerce issued a third supplemental questionnaire to Uttam Galva specifically, seeking additional clarification regarding the relationship

between itself and FIIPL, MEEL, and LSIL, did Uttam Galva provide the information."). In contrast, Commerce states that JSW "voluntarily reported" Affiliate X following the conclusion of the period of review. See id. at 10, 11 ("JSW raised this issue at the start of verification as a 'minor correction' to its affiliation questionnaire response."). Commerce also emphasized that Uttam Galva, unlike JSW, misrepresented the facts surrounding its acquisition of an affiliate. See id. at 10 (quoting finding in Post-Preliminary Analysis that Uttam Galva "provided false information that it acquired control of a single division of Lloyds Steel as a corporate entity, without providing any detail regarding how Lloyds Steel was in fact acquired as {a} whole, and only during the POR effectively divided into two affiliated companies, UVSL and LSIL.").

### A. Comparison of Application of AFA to Uttam Galva and JSW

Uttam Galva contends that "Commerce's explanations in the Second Remand Redetermination are not satisfactory and do not offer sufficient reasons for treating similar situations differently." See Pl.'s Br. at 6; see also id. at 12 ("There is no factual distinction of significance that would support differing treatment for JSW and Uttam Galva."). Uttam Galva argues that Commerce improperly distinguished Uttam Galva from JSW based on an unreasonable view of the differing "confluence of facts." See id. at 2 ("[E]ach proceeding before Commerce will present a unique set of facts, Commerce should not treat similarly situated respondents different because the same confluence of facts does not exist in different proceedings."). Uttam Galva maintains that the underlying facts surrounding the application of AFA to Uttam Galva were largely the same as those for

JSW, and therefore, it should be treated the same as JSW.  Id. at 11–12.  In particular,
Uttam Galva contends that Commerce's reliance on "mitigating factors" as the
distinguishing consideration as to the application of AFA to JSW as compared to Uttam
Galva is unreasonable.  Id. at 9.  Uttam Galva argues that Commerce was in fact "better
positioned" to investigate Uttam Galva's unreported affiliate, LSIL, because the record
remained open at the time of Commerce's discovery of the affiliate, whereas the record
was closed when Commerce discovered the undisclosed affiliate of JSW in the
investigation segment of the proceeding.  See id.

Commerce rejected Uttam Galva's arguments that JSW and Uttam Galva were
similarly situated meriting the same application of AFA.  See Second Remand Results
at 18–20.  As Commerce explained:

> Uttam Galva contends that Commerce's analysis indicates
> that the factual distinctions between JSW's and Uttam Galva's
> reporting are not meaningful.    Uttam Galva misstates
> Commerce's position, as laid out in the draft remand.  In the
> draft remand, we explicitly noted that it was the confluence of
> mitigating factors that led to partial application of AFA for
> JSW.  We emphasized that the particular facts of that case –
> e.g., where an unreported affiliate was operational for only a
> portion of the period of investigation/review, or where the
> respondent attempted to self-correct its response unprompted
> by Commence – may not, when viewed alone, render total
> AFA inappropriate.  Rather, we emphasized that those facts,
> taken together, guided our approach to selecting a (partial)
> AFA rate for JSW.

Id. at 18.  Commerce also dismissed Uttam Galva's argument as to the timing of its
reporting of its affiliation with LSIL, noting that:

> [w]hether Uttam Galva reported LSIL in response to
> Commerce's placement of information on the record or in
> response to Commerce's subsequent questionnaire, the end
> result is the same: It was approximately a year after issuance
> of the initial CVD questionnaire that Uttam Galva reported its
> relationship with LSIL, and, unlike in the investigation where
> JSW voluntarily informed Commerce of its affiliate, Uttam
> Galva did not volunteer information regarding LSIL until after
> Commerce placed the LSIL financial statement on the record
> and issued supplemental questions regarding LSIL to Uttam
> Galva.

Id. Commerce further explained that:

> [the agency] only discovered Uttam Galva's and LSIL's
> affiliation after placing affiliation/cross-ownership information
> on the record upon discovering an unreported relationship
> between Uttam Galva and LSIL and soliciting additional
> information from Uttam Galva on this issue.  We find this fact
> relevant to our decision to apply total AFA to Uttam Galva in
> the administrative review as compared with our application of
> partial AFA to JSW in the investigation.  Also relevant is the
> fact that JSW's affiliate was only operational during the final
> two months of the POR, while LSIL was operational during the
> entirety of the POR.

Id. at 19 (footnotes omitted).

Plaintiff also argues that Commerce was better positioned to investigate and

collect information as to Uttam Galva's affiliation with LSIL.  Commerce rejected this

argument highlighting that it was previously addressed by the court and that Uttam Galva

"'ignore[d] the importance that Commerce places on receiving affiliated company

information early in the proceeding.'"  Id. at 19 (citing Uttam Galva I).  Commerce further

emphasized that the affiliation only became apparent after placing affiliation/cross-

ownership information on the record upon discovering an unreported relationship

between Uttam Galva and LSIL and soliciting additional information from Uttam Galva on this issue.  Id.  This combined with the fact that LSIL was operational during the entirety of the POR as compared to JSW's affiliate that was operational for only the last two months of the investigation provides a reasonable basis for Commerce's determination. See id.  In sum, given this analysis and explanation, the court is not persuaded by Plaintiff's contentions that Commerce's determination to apply total AFA was unreasonable.

## B. Comparison of Application of AFA in other Proceedings

Alternatively, Uttam Galva maintains that even if Commerce has reasonably distinguished its treatment of Uttam Galva as compared to JSW, Commerce has still failed to address its application of partial AFA in other proceedings with similar circumstances. See Pl.'s Br. at 6–10 (citing Carbon and Alloy Steel Threaded Rod from the People's Republic of China, 85 Fed. Reg. 8833 (Dep't of Commerce Feb. 18, 2020) (final. determ. CVD investigation) ("CASTR from China"), and Certain Plastic Ribbon from the People's Republic of China, 84 Fed. Reg. 1064 (Dep't of Commerce Feb. 1, 2019) (final determ. CVD investigation) ("Plastic Ribbon from China").  Uttam Galva contends that Commerce's decision to apply partial AFA to similarly situated respondents in other proceedings demonstrates that Commerce's application of total AFA to Uttam Galva here is unreasonable.  See Pl.'s Br. at 6.

Uttam Galva maintains that "Commerce's recounting of the CASTR from China case and the facts surrounding the partial AFA application seek to minimize the similarity

between the underlying administrative review" and the proceeding in <u>CASTR from China</u>.

Pl.'s Br. at 7.  Commerce addressed Uttam Galva's proposed comparison of its situation

to that in <u>CASTR from China</u>, explaining that:

> Commerce's approach in <u>CASTR from China</u> is inapposite, however, because the facts are dissimilar to the facts surrounding Uttam Galva's reporting failure in this case. There, the respondent, Junyue, timely identified two companies as affiliated parties, but did not accurately describe the companies' operations.  Subsequently, at verification, Commerce learned that the two affiliates provided processing and manufacturing services; these facts were relevant to Commerce's attribution analysis and, in turn, relevant to Commerce's decision as to whether to solicit a questionnaire response from the affiliates.  Thus, there, the question was not whether affiliates were identified as such in the first instance.  Rather, the reporting deficiency related to whether Junyue provided complete information regarding the affiliates.  Similar to identifying a confluence of mitigating factors that distinguished application of partial AFA to JSW in the investigation, under the circumstances in <u>CASTR from China</u>, Commerce determined that total AFA was not warranted.  Here, in contrast, Uttam Galva's relationship with LSIL went unreported until Commerce placed information on the record and solicited a response on the matter. Additionally, as noted below, we determined that Uttam Galva provided certain information that did not accurately reflect its relationship to LSIL.  Thus, we find that the facts of this review are distinct from those surrounding Junyue's reporting in <u>CASTR from China</u>.

<u>Second Remand Results</u> at 16–17.

Uttam Galva further challenges Commerce's determination that the affiliate

information belatedly provided in <u>CASTR from China</u> was "voluntary."  <u>See</u> <u>id.</u>  Uttam

Galva's conclusory assertions that Commerce is arbitrarily distinguishing the

circumstances in <u>CASTR from China</u> do not persuade the court that Commerce acted unreasonably in applying total AFA to Uttam Galva.  Uttam Galva fails to cite any evidence to support its premise that, in <u>CASTR from China</u>, the respondent Junyue did not disclose the affiliate information voluntarily.  <u>See</u> <u>id.</u> (arguing that "[g]iven that the information regarding the two affiliates was only disclosed at verification, it is unlikely that the disclosure was voluntary.").  Commerce also explained that Junyue's reporting violation was categorically less severe than that of Uttam Galva, as Junyue had at least acknowledged the existence of the affiliate whereas Uttam Galva did not.  <u>See</u> <u>id.</u> at 17.  Given the totality of the circumstances, the court cannot conclude that Commerce acted unreasonably by refusing to find its application of AFA in <u>CASTR from China</u> to be comparable to the application of AFA to Uttam Galva in this matter.

As for <u>Plastic Ribbon from China</u>, Uttam Galva explains that "Commerce applied partial AFA to the mandatory respondent because it failed to report a predecessor company that operated during the average useful life period in its questionnaire responses and was disclosed at verification.  Commerce determined that the mandatory respondent impeded the investigation regarding whether the mandatory respondent could have used nonrecurring programs."  Pl.'s Br. at 8 (internal citations omitted).  Plaintiff's reliance on <u>Plastic Ribbon from China</u> is also misplaced as Uttam Galva did not fail to report a predecessor company.  <u>See generally</u> <u>Plastic Ribbon from China</u>, and accompanying Issues and Decision Memorandum at cmt. 12; <u>see also</u> Def.'s Resp. to Comments On [First] Remand Redetermination at 14, ECF No. 41 (citing Commerce's

Court No. 19-00044                                                                 Page 15

analysis in <u>Plastic Ribbon from China</u> and explaining why the circumstances are not comparable).   Accordingly, the court is not persuaded by Plaintiff's argument that Commerce acted unreasonably by not treating Uttam Galva the same as the mandatory respondent in <u>Plastic Ribbon from China</u>.

### IV. Conclusion

In sum, Commerce has provided a reasoned explanation for the differences in its application of AFA to JSW and Uttam Galva. Uttam Galva's alternative arguments about Commerce's determinations in <u>CASTR from China</u> and <u>Plastic Ribbon from China</u> implicitly concede that Commerce reasonably explained its application of partial AFA to JSW and total AFA to Uttam Galva (searching for alternative grounds of unreasonableness). Commerce, though,  reasonably explained why <u>CASTR from China</u> and <u>Plastic Ribbon from China</u> are distinguishable here given the underlying facts in each of those proceedings compared to the underlying facts justifying  total AFA for Uttam Galva.

For the foregoing reasons, the court sustains the <u>Second Remand Results</u>. Judgment will enter accordingly.


                                                        /s/ Leo M. Gordon
                                                        Judge Leo M. Gordon

Dated: April 29, 2021
         New York, New York